UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Debra Cox and Ted Cox<br><br>                Plaintiffs,<br><br>     v.<br><br>Princess Cruise Lines,<br>LTD., and DOES I through L,<br>inclusive<br><br>                Defendants. | CV 13-01765 RSWL (JEMx)<br><br>**ORDER RE: DEFENDANT'S<br>MOTION TO DISMISS<br>PORTIONS OF PLAINTIFFS'<br>COMPLAINT** [8] |

Currently before the Court is Defendant Princess Cruise Lines, Ltd.'s ("Defendant") Motion to Dismiss Portions of Plaintiffs' Complaint [8]. The Court, having reviewed all papers and arguments submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS:** The Court **GRANTS in part** and **DENIES in part** Defendant's Motion.

///

1

## I. BACKGROUND

This Motion stems from an Action brought by Plaintiffs Debra Cox ("Debra") and Ted Cox ("Ted"; collectively "Plaintiffs") against Defendant. Plaintiffs allege in their Complaint that on October 24, 2012, they embarked on a fourteen-day round-trip cruise from Los Angeles, California, to Hawaii aboard the *Golden Princess*, a cruise ship owned and operated by Defendant. Compl. ¶ 7. Debra has a disability consisting of a below-the-right-knee leg amputation, and she relies on a mobility scooter for transportation. Compl. ¶ 8. Prior to embarking on the cruise, Plaintiffs advised Defendant of Debra's disability and of her need for a handicap accessible room. Id. Defendant accommodated Debra by placing Plaintiffs in a wheelchair-accessible cabin with a balcony. Id. at ¶ 7. In order that disabled passengers might obtain access to the balcony from the cabin, Defendant purportedly designed, manufactured, installed, and maintained a ramp that allowed wheelchairs and mobility scooters to go over the cabin door threshold and outside to the balcony. Id. at ¶ 7. Plaintiffs allege that two days into their cruise, on October 26, 2012, Debra used the ramp to go outside the cabin onto the balcony. Id. at ¶ 9. On her way back into the cabin, the handicap ramp failed, separating under the load, and caused Debra's mobility scooter to trip over, resulting in a displaced intertrochanteric

fracture of Debra's right femur.  Id.

Plaintiffs subsequently instigated the present Action against Defendant and Does I through L, for alleged (1) negligence, (2) strict liability in tort, (3) common carrier negligence, and (4) loss of consortium [1].  Defendant presently moves pursuant to Federal Rule of Civil Procedure 12(b)(6) for dismissal of Plaintiffs' second, third, and fourth claims and Plaintiffs' "claim" for exemplary and punitive damages [8].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of one or more claims if the pleading fails to state a claim upon which relief can be granted.  Dismissal can be based on a lack of cognizable legal theory or lack of sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  However, a party is not required to state the legal basis for its claim, only the facts underlying it.  McCalden v. Cal. Library Ass'n, 955 F.2d 1214, 1223 (9th Cir. 1990), cert. denied, 112 S. Ct. 2306 (1992).  In a Rule 12(b)(6) motion to dismiss, a court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-moving party.  Klarfeld v. United States, 944 F.2d 583, 585 (9th Cir. 1991).

The question presented by a motion to dismiss is

not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of its claim. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 583 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id. at 555 (internal citation omitted). Although specific facts are not necessary if the complaint gives the defendant fair notice of the claim and the grounds upon which the claim rests, a complaint must nevertheless "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

If dismissed, a court must then decide whether to grant leave to amend. The Ninth Circuit has repeatedly held that a district court should grant leave to amend even if no request to amend the pleadings was made, unless the court determines that the pleading could not possibly be cured by the allegation of other facts. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). The court has discretion to deny leave to amend where deficiencies cannot be cured. Keniston v. Roberts, 717 F.2d 1295, 1300 (9th Cir. 1983).

///

**III. ANALYSIS**

Although neither Party disputes that this case is governed by maritime law, the Parties do not actually address the test for maritime law as defined by the Supreme Court in <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 534 (1995).  Thus, the Court addresses, as a preliminary matter, whether maritime law does, in fact, govern this case.  Although maritime law historically turned on the single question of whether the tort at issue occurred on navigable waters, <u>Gruver v. Lesman Fisheries Inc.</u>, 489 F.3d 978, 982 (9th Cir. 2007), the Supreme Court refined the test in <u>Grubart</u> so that a tort claim is subject to federal maritime law when (1) it occurs on navigable waters or is caused by a vessel on navigable water, (2) the incident has a potentially disruptive impact on maritime commerce, and (3) the activity giving rise to the incident has a substantial relationship to traditional maritime activities.  <u>Grubart</u>, 513 U.S. at 534.

Applying this test to the case at hand, the Court finds that the torts at issue are governed by maritime law because the lawsuit arises from alleged misconduct that occurred while the *Golden Princess* was in navigable waters; injuries at sea invariably have the potential to disrupt maritime commerce (<u>see</u> <u>Christensen v. Georgia-Pac. Corp.</u>, 279 F.3d 807, 815, n.31 (9th Cir. 2002); <u>McClenahan v. Paradise Cruises, Ltd.</u>, 888

F. Supp. 120, 122 (D. Haw. 1995)); and the navigation of a cruise ship has a substantial relationship to traditional maritime activities (see McClenahan, 888 F. Supp. at 122). Thus, in determining whether Plaintiffs have sufficiently stated claims upon which relief can be granted, the Court looks to federal maritime law.

Debra brings three claims against Defendant, only two of which are at issue here: strict liability in tort and common carrier negligence. Compl. ¶¶ 15-30. Upon reading the Complaint, it is clear that Plaintiffs believe Defendant, as a corporation, fulfills various roles, two of which form the bases of Debra's claims—the role of designer and manufacturer of the handicap accessible ramp that was placed in Plaintiffs' *Golden Princess* cabin (see id. at ¶¶ 7, 10, 16), and the role of a common carrier for the transport of paying passengers (see id. at ¶ 27). Plaintiffs' belief about Defendant's multi-faceted capacity and the corresponding allegations in Plaintiffs' Complaint informs the Court's analysis of Debra's claims for purposes of this Motion.

Defendant argues that Debra's claim for strict liability in tort must be dismissed because shipowners generally owe only a duty of reasonable care to passengers, and courts only apply strict liability in maritime passenger personal injury cases when a crew member commits an intentional tort or crime toward a passenger. Reply 3:19-4:6. While the sole case from

6

this Circuit upon which Defendant relies for this point appears at first glance to support Defendant's position (see Morton v. De Oliveira, 984 F.2d 289, 291-92 (9th Cir. 1993)), the facts of Morton are dissimilar to the ones at issue here, where Debra asserts strict product liability against the cruise line for having *defectively designed and manufactured a product* that was used on the ship itself.

Unlike the cases to which Defendant cites, Debra is not claiming that Defendant is strictly liable in its role as a common carrier for her injuries.  Instead, she claims that Defendant is strictly liable in its role as a product designer and manufacturer for the injuries she sustained when using the handicap accessible ramp that Defendant purportedly designed and manufactured.  As noted by Plaintiffs, the Supreme Court and the Ninth Circuit *have* adopted strict liability under maritime law for purposes of asserting strict product liability in tort.  See E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 865-66 (1986); Matthews v. Hyster Co., Inc., 854 F.2d 1166, 1168 (9th Cir. 1988).  Defendant does not dispute this.  Although Debra may not ultimately prevail on her strict liability claim if she cannot prove that Defendant did, in fact, design or manufacture the allegedly faulty handicap ramp, that is not the Court's concern at this stage of litigation.  What matters is that "[g]eneral maritime law incorporates strict liability and

negligence principles of products liability," and Debra has asserted a strict product liability claim under maritime law against Defendant, the purported designer and manufacturer of an allegedly faulty product. <u>Matthews</u>, 854 F.2d at 1168. Although the Southern District of Florida reached a different conclusion in <u>Bird v. Celebrity Cruise Line, Inc.</u>, 428 F. Supp. 2d 1275 (Nov. 4, 2005), when determining whether Celebrity Cruise Line could be held strictly liable for providing tainted food to passengers, this Court is not bound by the <u>Bird</u> court's decision, particularly when it is contrary to Ninth Circuit precedent establishing that strict product liability is an available remedy under maritime law for personal injury. Thus, the Court **DENIES** Defendant's request to dismiss Debra's claim for strict liability in tort.

Unlike her claim for strict liability in tort, Debra's common carrier negligence claim asserts that Defendant breached a duty while acting in its capacity as a common carrier cruise ship, not as the designer or manufacturer of a product. Compl. ¶¶ 26-30. The Supreme Court has held that in caring for passengers, "the owner of a ship in navigable waters owes to all who are on board . . . the duty of exercising reasonable care under the circumstances of each case." <u>Kermarec v. Compagnie Generale Transatlantique</u>, 358 U.S. 625, 631 (1959). In asserting her third claim against Defendant, Debra admittedly holds Defendant to

a higher "common carrier" standard rather than a "reasonable care" standard.  Compl. ¶ 27; Opp'n 6:1-3.  As Plaintiffs suggest, Defendant's common carrier status may be relevant for purposes of determining what constituted "reasonable care under the circumstances."  See In re Catalina Cruises, Inc., 137 F.3d 1422, 1425-26 (9th Cir. 1998); Rainey v. Paquet Cruises, Inc., 709 F.2d 169, 172 (2d Cir. 1983).  However, because this is a maritime tort action for negligence, Defendant may only be held to a standard of reasonable care, not to the higher standard for common carriers.  Catalina Cruises, 137 F.3d at 1425; Peters v. Titan Navigation Co., 857 F.2d 1342, 1344 (9th Cir. 1988).  Accordingly, the Court **GRANTS** Defendant's request to dismiss Debra's common carrier negligence claim for lack of cognizable legal theory without leave to amend, for Plaintiffs' pleading cannot be cured with additional allegations of any other facts.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

　　"[C]ourts have generally held that . . . loss of consortium . . . [is] not recoverable under the general maritime law for accidents occurring on the high seas."  Stepski v. M/V NORASIA ALYA, No. 7:06-CV-01694, 2010 WL 6501649, at *9 (S.D.N.Y. Jan. 14, 2010).  See Doyle v. Graske, 579 F.3d 898, 908 (8th Cir. 2009) ("[G]eneral maritime law does not allow recovery of loss-of-consortium damages by the spouses of nonseafarers negligently injured beyond the territorial waters of

9

the United States."); Adler v. Royal Cruise Line, Ltd., No. C 95-1304 CW, 1996 WL 438799, at *6 (N.D. Cal. Mar. 20, 1996) ("Under the Ninth Circuit rule, damages for loss of consortium are not recoverable in cases involving injuries to passengers outside of territorial waters."); Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1407-08 (9th Cir. 1994) (holding that loss of consortium damages were not available under general maritime law to the dependents of a cruise ship passenger injured outside state territorial waters). Although Defendant insists that Debra incurred her injury while the *Golden Princess* was cruising on the "high seas" outside state territorial waters (Reply 7:20-25), this assertion requires a factual finding, which is not the purpose of a Rule 12(b)(6) motion to dismiss. Looking within the "four corners" of the Complaint, Plaintiffs allege that Debra sustained injury two days after the *Golden Princess* embarked from Los Angeles to Hawaii. Compl. ¶¶ 7, 9. Plaintiffs make no allegations as to *where* the ship was specifically located. Absent clear indication in the Complaint that the *Golden Princess* could not have been within territorial waters at the time of Debra's injury, Ted should be permitted to pursue this claim and offer evidence in support of it, regardless of whether he can ultimately prevail on it. Twombly, 550 U.S. at 583. Therefore, the Court **DENIES** Defendant's request to dismiss Ted's claim for loss of consortium.

Lastly, Defendant asks the Court to dismiss Plaintiffs' "claim" for punitive damages. See Mot. Part V. Although Defendant acknowledges that punitive damages are available under federal maritime law for "wanton, willful, or outrageous conduct," Defendant contends that the facts as alleged in relation to Plaintiffs' strict liability claim do not rise to a level justifying the imposition of punitive damages. Mot. 13:15-16 (quoting Atlantic Sounding Co., Inc. v. Townsend, 557 U.S. 404, 409 (2009)), 14:7-8.

As succinctly stated by the Southern District of Florida,

> the plaintiff does not have a "claim" for punitive damages. . . . [P]unitive damages is merely one form of *relief* that the plaintiff may be entitled to if she prevails on her claim. . . . ["The] test of a complaint pursuant to a motion to dismiss lies in the claim, not in the demand. Thus, the only issue on a motion [to] dismiss is whether the claim as stated would give the plaintiff a right to any relief, rather than to the particular relief demanded.["]

Doe v. Royal Caribbean Cruises, Ltd., No. 11-23323-CIV, 2012 WL 920675, at *2 (S.D. Fla. Mar. 19, 2012) (quoting Cassidy v. Millers Cas. Ins. Co., 1 F. Supp. 2d 1200, 1214 (D. Colo. 1998)). Accordingly, unless punitive damages appear to be a legal impossibility (as opposed to a factual impossibility), the Court will not

11

strike a demand for punitive damages that stems from a well pled claim under a cognizable legal theory. Id. at *5 (noting that the facts underlying a claim for punitive damages need not be specifically pled because Federal Rule of Civil Procedure 8 only requires a plaintiff to make a "demand" for the relief sought, as opposed to a "short and plain statement"). Because Plaintiffs have sufficiently pled Debra's claim for strict liability in tort, and Defendant does not allege that punitive damages are a legal impossibility here, the Court **DENIES** Defendant's request to dismiss Plaintiffs' demand for punitive damages.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss Portions of Plaintiffs' Complaint. The Court **GRANTS** Defendant's request to dismiss Debra's claim for common carrier negligence and **DENIES** Defendant's request to dismiss Debra's strict liability in tort claim, Ted's loss of consortium claim, and Plaintiffs' demand for punitive damages.

**IT IS SO ORDERED.**

DATED: June 25, 2013         RONALD S.W. LEW
                             **HON. RONALD S.W. LEW**
                             Senior U.S. District Court Judge